## LONGINO v. SMITH.

### Opinion delivered April 2, 1923.

1. HUSBAND AND WIFE—RATIFICATION OF UNENFORCEABLE CONTRACT. —Acts 1895, p. 58, authorizing married women to make executory contracts to convey land, impliedly authorizes a ratification of an executory contract previously made which had been unenforceable only because of such disability.

2. HUSBAND AND WIFE—RATIFICATION BY MARRIED WOMAN OF UNENFORCEABLE CONTRACT.—Where, after the passage of Acts 1895, p. 58, a married woman, who, before the passage thereof, had given a bond for title unenforceable when made, knew that the grantee had possession and was making improvements thereunder and had made payments for the land to her husband as her agent, she thereby ratified the contract evidenced by the bond for title.

3. SPECIFIC PERFORMANCE—RATIFICATION OF UNENFORCEABLE CONTRACT.—Where a purchaser had possession of land under a bond for title from a married woman which became valid by ratification after the passage of Acts 1895, p. 58, he became entitled to compel execution of a deed upon completion of his payments, and this right was not defeated because he took a deed from his deceased vendor's husband, who had only a life estate.

Appeal from Columbia Chancery Court; *J. Y. Stevens,* Chancellor; reversed.

*Henry Stevens,* for appellant.

Burchfield, appellant, vendor, purchased the land in controversy from Mrs. Smith, who, with her husband, J. E. Smith, executed a bond for title therefor. Burchfield cleared, cultivated and paid for the land, and Smith, after his wife's death, executed a deed to him. She was not in possession after bond for title made nor did she have a right of action against her vendor, neither did J. E. Smith have curtesy in the land. *Smith* v. *Rob-*

*ertson,* 13 Ark. 133; *Higgs* v. *Smith,* 100 Ark. 544; *Cleveland* v. *Aldridge,* 94 Ark. 53; *Strauss* v. *White,* 66 Ark. 170; 39 Cyc. 1886. There is no estate by the curtesy initiate. Const. 1874; *McDaniel* v. *Groce,* 15 Ark. 484; 8 R. C. L. 407, sec. 20; *Hampton* v. *Cook,* 357. Burchfield was the equitable owner of the land. *Whittington* v. *Simmons,* 32 Ark. 379; *Higgs* v. *Smith,* 100 Ark. 543; *Tunstall, Exr.* v. *Jones,* 25 Ark. 272; 8 R. C. L. 396; *Chew* v. *Southwork, Com'r.,* 5 Rawle 160 Pa.; *Welch* v. *Chandler,* 13 B. Mon. 431; 1 Tiffany on Real Property 836; *McKee* v. *Jones,* 6 Pa. State 425; *Norton* v. *McDevit,* 122 N. C. 755. Mrs. Smith died in 1897, after Burchfield had paid three years on the land and two years after act 47, Acts 1895, p. 587, authorizing married women to make executory contracts, was approved. She recognized the validity of this contract after the passage of the law, and ratified it. *Goulding* v. *Davidson,* 26 N. Y. 604; *Winnal* v. *Adney,* 3 Bos. & P. 247; *Brown* v. *Bennett,* 75 Pa. 420; *Trout* v. *McDonald,* 83 Pa. 114; *Viser* v. *Bertrand,* 14 Ark. 267; *Tucker* v. *West,* 29 Ark. 386; *McKinney* v. *Demby,* 44 Ark. 74; *Planters' Fire Ins. Co.* v. *Ford,* 106 Ark. 568; *Hoyt* v. *Western Union Tel. Co.,* 85 Ark. 473; *N. Y. Life Ins. Co.* v. *Mason,* 235 S. W. 422. If Burchfield did not hold the land under Mrs. Smith, her bond being invalid, then he held it under Smith and adversely to everybody else. *Coogler* v. *Rogers,* 7 So. 391; *Downs* v. *Porter,* 54 Tex. 59; *Smith* v. *Robertson,* 235 S. W. 847; 1 Cyc. 1098. Heirs of Mrs. Smith barred by limitation. *Dowell* v. *Tucker,* 46 Ark. 438; *Bender* v. *Bean,* 52 Ark. 532; *Carroll* v. *Carroll,* 92 Ark. 625; *Reid* v. *Money,* 115 Ark. 1. Smith was also barred of any right of curtesy. *Wesington* v. *Murphy,* 2 Head, 672; *Stoke* v. *Slayden,* 8 Baxt., 307; *Guion* v. *Anderson,* 8 Humph. 298; *Koltonbrock* v. *Cracraft,* 36 Ohio Stat. 588. Dependent any way on wife's possession at death. *Stuart* v. *Ross,* 50 Miss. 776; *Redus* v. *Hayden,* 43 Miss. 614. Privies of Mrs. Smith could not claim against Burchfield, the deed conveying the land to him not having been

recorded till five years after his deed from Smith was made. Sec. 1537, Crawford & Moses' Digest. *Files* v. *Law,* 115 S. W. 373; *White* v. *Moffett,* 108 Ark. 491; *Rushing* v. *Lanier,* 111 S. W. 1089; *Clark* v. *Hoover,* 110 S. W. 792.

*John H. Crawford* and *Dwight H. Crawford,* for appellees.

J. E. Smith was entitled to curtesy in the land. If a bond for title was executed therefore by Mrs. Smith, it was void, being made before act March 19, 1895, authorizing married women to make executory contracts to convey land. *Sparks* v. *Moore,* 66 Ark. 437. The cases cited by appellant on question of her ratification of said bond for title after the passage of the law are not in point, there being no express promise by her to be bound by it, nor any consideration for such a promise. Neither was she or those claiming under estopped by her conduct. *Anders* v. *Roark,* 108 Ark. 248; *Fox* v. *Drewry,* 62 Ark. 316. If the wife's bond for title was not a valid contract, her husband could not have been deprived of his curtesy estate. *Harrod* v. *Myers,* 21 Ark. 592; *Bagley* v. *Fletcher,* 44 Ark. 153; *Farley* v. *Stacy,* 197 S. W. (Ky.) 636. She could not have been compelled to convey the land under the void title bond. had she received all the purchase money. *Felkner* v. *Tighe,* 39 Ark. 357. No adverse holding of the lands by Burchfield against Mrs. Smith and her heirs. He went into possession under her bond for title. *Britt* v. *Berry,* 133 Ark. 589; *Miller* v. *Miller,* 130 Ark. 28; *Gee* v. *Hatley,* 114 Ark. 376; 2 C. J. 134, 75. There can be no tacking of disabilities, but there is no such question here. The statute of limitations did not begin to run against Mrs. Smith in her lifetime because of coverture, and at her death her husband's curtesy consummate vested, and he was entitled to possession. The reversioners under whom appellees claim had no right to possession till the curtesy estate ended, and suit was begun thereafter before the bar attached. *Jones* v. *Freed,* 42 Ark. 357;

*Jackson* v. *Johnson,* 5 Cowen. 74, 15 Am. Dec. 433. Not necessary for wife to have possession at death to support curtesy estate. *McDaniel* v. *Grace,* 15 Ark. 465, 18 R. C. L. 392. And attempted conveyance of the fee by life tenant only passes his life estate. *Smith* v. *Maberry,* 148 Ark. 216. Wife had right to possession at her death here, not having parted with it by void bond. The failure to record the deed from Mrs. Smith's vendor can not help appellants, since it showed title still in him and not in her husband. Nor was there any estoppel against D. E. Smith pleaded or proved. *Anders* v. *Roark,* 108 Ark. 248. No meeting of minds in execution of bond for title, Burchfield thinking he was purchasing from Smith and not his wife. Nor was there any ratification by her thereafter. Smith, the husband, was entitled to curtesy. His wife was seized of the land and was in possession by her tenant Burchfield, under his contract with her husband, at time of her death. Const. 1874. *Carpenter* v. *Garrett,* 75 Va. 129; *Jackson* v. *Johnson,* 5 Cowen. 75; 15 Am. Dec. 433; *McDaniel* v. *Grace,* 15 Ark. 465; *Harrod* v. *Myers,* 21 Ark. 592. Possession follows title. *Waite* v. *Moore,* 89 Ark. 19; *Millar* v. *Fraley,* 23 Ark. 735; *Ringo* v. *Woodruff,* 43 Ark. 469; *Gates* v. *Kelsey,* 57 Ark. 523. Presumption that Smith rented the land to Burchfield as his wife's agent. Sec. 5394, Crawford & Moses' Digest. *Hoffman* v. *McFadden,* 56 Ark. 217. Wife was owner, and entitled to possession at her death. Bond was void, as already shown. *Sparks* v. *Moore,* 66 Ark. 437. No ratification after passage of act authoring married women to make executory contracts, as chancellor found. Neither the tenant by the curtesy nor his vendee can hold adversely to remainderman until death of life tenant. *Smith* v. *Maberry,* 148 Ark. 216; *Jones* v. *Freed,* *supra.*

*Henry Stevens,* in reply.

The testimony shows that Mrs. Smith ratified bond for title and contract of sale of land after the passage of the act authorizing married women to make executory contracts. 66 Ark. 437, cited by appellees, does not

show the husband entitled to curtesy even under the
facts there, which differ from the present case. Only
possession at wife's death can give husband curtesy es-
tate now. Const. 1874. Her property separate prop-
erty. Sec. 7, art. 9, Const.

Smith, J. Appellants, who were the plaintiffs be-
low, brought this suit to quiet their title to a forty-acre
tract of land. They claimed by purchase from J. W.
Burchfield, whose title, they allege, became perfect be-
fore his sale to them, by reason of his long-continued
adverse possession thereof. The deed from Burchfield
to them was dated March 11, 1921. The defendants ob-
tained deeds from the heirs of Alice Smith, who died
intestate on the ———— day of May, 1897.

The testimony established the following facts: In
December, 1893, or January, 1894, Mrs. Smith and J. E.
Smith, her husband, executed to Burchfield a bond for
title to the land in litigation. The title to the land was
in Mrs. Smith, but her husband acted for her in the
transaction, and was her authorized agent. After con-
tracting to buy the land, Burchfield commenced to clear
and cultivate it, and by the end of 1896 had it all in
cultivation except five acres. Burchfield made payments
every year out of the proceeds of the sale of his cotton,
which Smith handled, after paying Smith his supply
bills. Burchfield completed his payments and received
his deed from Smith January 7, 1904. At the time of
Mrs. Smith's death she was survived by six minor chil-
dren, in addition to her husband, who died July 18, 1919.

The prayer of the complaint was denied, and it was
dismissed for want of equity.

The action of the court is defended in a very inter-
esting brief in which the following argument is made.
Mrs. Smith was a married woman when the bond for
title was made. The bond for title was an executory con-
tract, and unenforceable as such. Mrs. Smith never
made a deed to Burchfield, and after her death her

husband became entitled to the possession of the land as tenant by the curtesy, and his deed purporting to convey the fee was effective only as a conveyance of his life estate, and the statute of limitation was not set in motion against her heirs, the remaindermen, until the death of the husband, the life tenant, and this suit was brought before this adverse possession ripened into title.

The trouble with the argument on behalf of the remaindermen is that they blow both hot and cold on the effect of the bond for title.

It is true that Burchfield's entry under the bond for title was permissive, and that he remained in possession under this contract until after the death of Mrs. Smith before he obtained his deed. But this bond for title should be given effect, or it should be disregarded. It should not be regarded as a valid instrument for the purpose only of making Burchfield's entry permissive, but invalid for all other purposes. If it was valid as a contract, then its conditions were performed by Burchfield by payments made to Mrs. Smith's constituted agent; and if this is true, then Burchfield, in equity, would be entitled to a deed, if the one he obtained from Smith did not convey the title. We prefer this view of the case. The bond for title was voidable, when made, because it was a married woman's executory contract, and it remained a voidable executory contract until after the passage of the act of March 19, 1895 (Acts 1895, p. 58), authorizing married women to make executory contracts to convey real estate. Mrs. Smith did not die until May, 1897. So she lived two years after the passage of the act authorizing her to make an executory contract, and it is insisted that, after the removal of her disability, she ratified the contract.

We regard this as the controlling question in the case. After the passage of the act of 1895, *supra*, a married woman was authorized to make an executory contract to convey land. As an incident to that right,

she likewise was authorized to ratify an executory contract of that kind previously made, which had been unenforceable only because of her disability. Did Mrs. Smith ratify the contract?

We are constrained to answer this question in the affirmative. The parties all lived in the neighborhood of the land. Smith was unquestionably his wife's agent in the transaction. He put Burchfield in possession of the land as purchaser under the bond for title. Burchfield immediately began to clear and improve the land, and by the end of 1896 had it all in cultivation except five acres. The clearing was all done in Mrs. Smith's life time, and she must have known of it. She had actual knowledge that Burchfield was on the land, for her bond for title entitled him to enter thereon, and a substantial part of the clearing was done after the passage of the act of 1895. She knew that the consideration was $350, for this was the consideration recited in the bond for title, and she knew, as a matter of law, that when it was paid Burchfield would be entitled to a deed.

She had actual knowledge that Burchfield was delivering cotton to her husband, for on one occasion Burchfield brought two bales of cotton to Smith's yard, and was about to throw the cotton off the wagon, but there had been a heavy rain and the yard was wet and muddy, and Mrs. Smith said to Burchfield, ''I would never throw that cotton off until I had sold it,'' and Burchfield obeyed this direction.

There is nothing in the record that calls into question the good faith of this transaction. Smith and his wife are both dead, yet Burchfield, who is not a party to this litigation, manifests no disposition to take advantage of that fact as a witness by stating that payments were made to Mrs. Smith directly; but the circumstances were such that Mrs. Smith must have known that payments were being made to her agent, and that her vendee was, in good faith, clearing the land—all this after the

removal of her disability; and she must therefore be held to have ratified the contract of sale evidenced by the bond for title.

The land was not very valuable at the time Burchfield contracted to buy it, as is evidenced by the fact that he only agreed to pay $350 for it. We do not know when the last payment was made, nor what amount was paid after Mrs. Smith's death, but we do know that the balance was paid to Smith, and that in 1904 he executed a deed to Burchfield, pursuant to the bond for title.

Smith's children were minors, and lived with him. It does not appear what estate their mother left, nor whether there was any administration on her estate. We do not know by what authority Smith made collections of the unpaid purchase money after his wife's death, if he made any. This point was not developed, and any collections thus made must have been comparatively small, and after this lapse of time we think it fair to assume that Smith properly accounted for such collection, if any he made.

Burchfield had possession under a bond for title which, by ratification, became valid. This possession began in 1894 and continued uninterrupted since that date until the execution of his deed to the plaintiffs, who have since been in possession. Burchfield obtained a deed from Smith in 1904, which, if valid for no other purpose, at least evidenced the fact that Burchfield had paid the purchase money called for in the bond for title. Burchfield conveyed to the plaintiffs here March 11, 1921, after he had had seventeen years' possession, and the only thing which is suggested as having prevented this possession from ripening into title is that, after Mrs. Smith's death, her husband became tenant by the curtesy and entitled to the possession as such, and the deed from him in 1904 was effective as a conveyance of his life estate and valid as such, and operated to prevent the running of the statute of limitations.

But Burchfield's possession was not referable to the deed from Smith. He had a prior possession and the right of possession under his bond for title, and, in equity, he became entitled to a deed from Mrs. Smith upon the completion of his payments, and if she were alive she could be compelled to execute a deed, and this right is not to be defeated because Burchfield took a deed from the life tenant. Burchfield was entitled to more than Smith's deed gave him, and equity will award him now the relief to which he became entitled when he completed the payments on his land.

To that end the decree of the court below will be reversed, and the cause remanded, with directions to cancel the title of the defendants.